# EXHIBIT B

**STATE OF MICHIGAN**
**9TH JUDICIAL CIRCUIT**
**KALAMAZOO COUNTY CIRCUIT COURT**

ARBOR FINANCIAL CREDIT UNION,

      Plaintiff,

v.

GREATER NEVADA CREDIT UNION,

      Defendant.

Case No. 2026 - *Ο2 44*    - CB
Hon.    **Curtis J. Bell**

**JURY TRIAL DEMANDED**

---

Taylor L. Ester (P85649)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: 248-841-2200
tle@millerlawpc.com

Jonathan S. Mann (*pro hac vice forthcoming*)
**PITTMAN, DUTTON, HELLUMS,**
**BRADLEY & MANN, P.C.**
2001 Park Place Suite 1100
Birmingham, AL 35203
T: (205) 322-8880
jonm@pittmandutton.com

*Attorneys for Plaintiff*

---

## COMPLAINT

*This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035*

Plaintiff Arbor Financial Credit Union ("Plaintiff" or "AFCU") brings this suit against Defendant Greater Nevada Credit Union ("Defendant" or "GNCU"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, and alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this action to recover damages arising from Defendant's breaches of five separate loan participation agreements and related negligent misrepresentations and/or fraudulent conduct.

2.      Between 2017 and 2019, Defendant GNCU entered into a series of commercial loans with various borrowers and subsequently sold participation interests in those loans to Plaintiff. These transactions between Plaintiff and GNCU were governed by loan participation agreements, wherein GNCU expressly represented and warranted that (1) all borrowers were either members of GNCU or of another participating credit union,(2) that GNCU would retain at least a five percent (5%) ownership interest in each loan, and (3) GNCU complied and adhere to all other applicable laws, rules and NCUA regulations regarding these loan participations.

3.      GNCU's representations and warranties to Plaintiff in the loan participation agreements are restatements of applicable laws and National Credit Union Administration ("NCUA") regulations governing credit unions, as well as GNCU's own policies and procedures.

4.      Despite these written assurances, Plaintiff now knows that the borrowers failed to meet the requisite membership criteria to be an eligible borrower of a credit union at the time the loans were originated and/or participated to Plaintiff.

5.      Defendant knew or should have known that it was making a material representations to Plaintiff about that fact at the time the subject loan participation agreements were executed.

6.      Federal regulators from NCUA ultimately required GNCU to divest its ownership interest in two loans, specifically  BRTX and Notre Dame loans, due to violations of 12 CFR § 701.22, after finding that GNCU participated in loans which were not permitted by law, causing

2

GNCU to breach its contractual obligations to maintain the required retention interest as specified in the loan participation agreements.

7.    Plaintiff entered into the participation agreements in reasonable reliance on Defendant's representations and warranties regarding borrower membership, regulatory compliance, and loan-retention requirements. GNCU's representations and warranties were material to Plaintiff's decision to purchase participation interests, and Plaintiff would not have entered into the transactions had it known that Defendant was not, in fact, complying with these mandatory NCUA regulations, federal laws, or their own internal policies and procedures.

8.    As a result of Defendant's breaches of contracts, negligent and/or fraudulent misrepresentations, and violations of federal requirements, Plaintiff sustained significant losses, including loss of principal, lost interest, charge-offs, and other damages directly tied to the defective and improperly originated loans in which Plaintiff purchased participation interests from Defendant.

9.    GNCU's misconduct was not isolated to a single transaction but instead reflects, at best, a pattern of systemic deficiencies in its underwriting, due diligence, borrower-membership verification, and compliance procedures—at worst, it reflects a pattern of fraudulent misrepresentations, concealments, and/or inducements. GNCU disregarded both federal regulations and its own internal lending policies, all while presenting Plaintiff with assurances designed to induce Plaintiff to purchase participation interests that it otherwise would not have agreed to purchase.

10.    Through this action, Plaintiff seeks to hold GNCU accountable for its breaches of contract, negligent and/or fraudulent actions, omissions, and misrepresentations, failures to comply with federal participation-lending requirements, and the resulting financial harm imposed

3

upon Plaintiff. Plaintiff seeks all available legal and equitable relief, including complete rescission of the subject agreements, contractual damages, compensatory damages, punitive damages, interest, attorneys' fees, and any additional relief this Court deems just and proper.

## PARTIES

11.    Plaintiff AFCU is a state charted credit union with its principal place of business located at 1551 South 9th Street, Kalamazoo, Michigan, 49009.

12.    Defendant GNCU is a state credit union with its headquarters and principal place of business located at 451 Eagle Station Lane, Carson City, Nevada 89701.

13.    At all relevant times, GNCU engaged in commercial lending and the sale of loan participation interests, and represented itself as compliant with NCUA regulations governing the origination and sale of loan participations.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to MCL § 600.605, which grants the circuit court original jurisdiction over all civil claims and remedies except where exclusive jurisdiction is given to another court.

15.    This Court has personal jurisdiction over Defendant pursuant to MCL §§ 600.711 and 600.715, because GNCU has transacted business within the State of Michigan, purposefully availed itself of conducting activities within Michigan, and its acts and omissions giving rise to this dispute were directed toward, and caused consequences within, the State of Michigan.

16.    At all relevant times, GNCU engaged in commercial lending activities and the sale of loan participation interests to Michigan entities, including Plaintiff, and represented itself as compliant with applicable federal regulations and laws governing the origination and sale of loan

4

participations. GNCU's actions were intentionally directed toward a Michigan-based credit union and resulted in substantial effects within Michigan.

17. Venue is proper in this Court pursuant to Michigan law because Plaintiff maintains its principal place of business at 1551 South 9th Street, Kalamazoo, Michigan 49009, and the resulting harm and economic injury were suffered in Kalamazoo County.

## GENERAL ALLEGATIONS

18. Between 2017 and 2019, GNCU originated a series of commercial loans and solicited Plaintiff to purchase participation interests in those loans. During this period, GNCU marketed itself as a compliant and reliable originating institution and expressly represented in its contracts that its loan participation offerings adhered to all applicable federal regulations and laws governing credit union lending practices.

19. In connection with each participation opportunity, GNCU prepared a written loan participation agreement that contained express representations and warranties regarding the nature of the underlying borrowers and GNCU's own obligations. These warranties included assurances that all borrowers were members of either GNCU or of another participating credit union, as required by both federal law and GNCU's internal membership policies and procedures.

20. Each loan participation agreement entered into between GNCU and Plaintiff included a section entitled "Representations and Warranties by Originating Institution." The first subheading beneath this section is titled "Status of Borrower" and states: "Borrower is a member of either the Originating Institution (if Originating Institution is a credit union) or of a Participant (holding an active Participation Interest in the Loan) that is a credit union."

5

21. Each participation agreement also included GNCU's express warranty that it would retain at least a five percent (5%) ownership interest in every loan sold to Plaintiff, consistent with 12 C.F.R. § 701.22(b)(3), which mandates minimum retention for originating credit unions.

22. GNCU specifically represented in each Loan Participation Agreement that the "Originating Institution has and will retain a sufficient interest in the Loan to meet the applicable minimum retention obligations set out in 12 C.F.R. § 701.22(b)(3). At this time, the Originating Institution's retained interest is 5%."

23. Additionally, GNCU represented that it would maintain this required interest for the life of each loan.

24. Plaintiff reasonably relied upon these representations and warranties in evaluating the proposed transactions.

25. Borrower membership and originating-institution retention are each critical components of regulatory compliance and risk mitigation for credit union loan participations. Plaintiff would not have entered into the agreements had GNCU not expressly represented that it had satisfied these mandatory requirements.

26. Contrary to the representations and warranties made to Plaintiff, GNCU knew or should have known at the time each loan was originated that none of the borrowers were members of GNCU or of any participating credit union.

27. This fact directly contradicts specific contractual representations GNCU made to Plaintiff in each participation agreement.

28. GNCU's internal policies and procedures also required borrower membership verification prior to loan origination.

29.    Despite these requirements, GNCU originated the loans without confirming borrower eligibility and negligently and/or fraudulently concealed and/or suppressed this information and nonetheless chose to represent to Plaintiff that the borrowers satisfied all membership criteria.

30.    GNCU further breached its contractual warranties to Plaintiff by failing to retain the required five percent ownership interest in several of the loans it sold to Plaintiff.

31.    After Plaintiff entered into the subject loan participation agreements, federal regulators later determined that GNCU failed to originate the loans from an eligible organization and required GNCU to divest its remaining interests in the loans to BRTX and Notre Dame. This divestment constituted an additional breach of the participation agreements and confirmed that GNCU was not adhering to the required federal lending standards.

32.    Several of the borrowers associated with the subject loans subsequently defaulted on their obligations. These defaults exposed Plaintiff to substantial financial losses, including, but not limited to, loss of principal, lost interest income, charge-offs, and other damages that Plaintiff would not have incurred but for GNCU's misrepresentations and failure to comply with federal regulations, its internal policies and procedures, and the express terms of the participation agreements.

33.    GNCU's actions and omissions reflect systemic failures in its underwriting and due diligence processes, borrower-membership verification procedures, loan participation procedures, and compliance controls. Instead of adhering to its own policies and the regulatory framework governing credit union lending, GNCU repeatedly misrepresented material facts to Plaintiff to induce Plaintiff to purchase participation interests it otherwise would not have acquired.

34.     As a direct and foreseeable result of GNCU's breaches of contract, negligent and/or fraudulent misrepresentations, and regulatory violations, Plaintiff has suffered significant losses and now brings this action to obtain redress for those losses.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (BRTX Loan)

35.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

36.     In connection with BRTX, LLC, on or about March 9, 2018, Plaintiff and GNCU executed a Loan Participation Agreement (the "BRTX Loan Participation Agreement") under which GNCU sold to Plaintiff a participation interest in the loan to BRTX, LLC.

37.     GNCU expressly warranted in the BRTX Loan Participation Agreement that the borrower, BRTX, LLC, was a member of either the originating credit union, GNCU, or of a participating credit union.

38.     GNCU breached this warranty because BRTX was not a member of GNCU or any other participating credit union at the time the BRTX Loan Participation Agreement was made. Since then, BRTX, LLC defaulted on the loan.

39.     Additionally, GNCU expressly represented and warranted that it would hold an interest in the BRTX Loan Participation Agreement to satisfy 12 C.F.R. § 701.22(b)(3), which was an amount equal to five percent (5%).

40.     GNCU breached this representation and warranty because GNCU sold its ownership interest in the BRTX loan. Since then, BRTX, LLC defaulted on the loan.

41.     As a direct and proximate result of GNCU's Breach of the BRTX Loan Participation Agreement, Plaintiff has sustained or will sustain damages, including but not limited

8

to the value of its participation interest in the BRTX Loan Participation Agreement, lost profits, and consequential damages, costs, and fees.

42.    Plaintiff therefore seeks all appropriate damages, together with interest, attorney's fees, and costs, as allowed by law and the terms of the BRTX Loan Participation Agreement.

## SECOND CLAIM FOR RELIEF
### Negligent Misrepresentation and Concealment
### (BRTX Loan)

43.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

44.    At all relevant times, GNCU was acting in the course of its business, profession, employment, and/or in the context of the BRTX Loan Participation Agreement.

45.    In connection with the transaction or occurrence(s) described above, GNCU supplied false information to Plaintiff regarding the BRTX Loan Participation Agreement in which Plaintiff had a pecuniary interest.

46.    In connection with the transaction or occurrence described above, GNCU supplied false information to Plaintiff, including but not limited to the following representations:

    a.    The loan to BRTX, LLC satisfied all criteria for permissible loan participation under 12 C.F.R. § 701.22(b)(3).

    b.    BRTX, LLC was a member of either the originating credit union, GNCU, or of a participating credit union.

    c.    GNCU expressed that it would hold an interest in the BRTX Loan to satisfy 12 C.F.R. § 701.22(b)(3), which was an amount equal to five percent (5%).

47. GNCU made these representations for the guidance of Plaintiff in Plaintiff's business and/or financial decisions and transactions regarding participation in the BRTX Loan Participation Agreement.

48. Additionally, at all relevant times, GNCU owed Plaintiff a duty to exercise reasonable care in originating, underwriting, administering, and offering participation interests in the BRTX Loan Participation Agreement, including a duty to avoid misleading Plaintiff by concealing, omitting, or suppressing material facts necessary to ensure that GNCU's communications were accurate, complete, and not deceptive.

49. GNCU possessed material information regarding the BRTX Loan Participation Agreement that was not known to Plaintiff and that Plaintiff could not have reasonably discovered through ordinary diligence, including information relating to borrower membership eligibility, underwriting deficiencies, and GNCU's noncompliance with 12 C.F.R. § 701.22.

50. GNCU knew, or in the exercise of reasonable care, should have known that Plaintiff would rely on GNCU to disclose material information necessary for Plaintiff to evaluate the risks of purchasing a participation interest in the BRTX Loan Participation Agreement.

51. GNCU negligently failed to disclose material facts to Plaintiff, including but not limited to:

    a. That BRTX, LLC was not a member of GNCU or any participating credit union, or that membership had not been properly verified;

    b. The loan to BRTX, LLC satisfied all criteria for permissible loan participation under 12 C.F.R. § 701.22(b)(3);

    c. That GNCU had failed to comply with its obligations under 12 C.F.R. § 701.22(b)(1) relating to borrower membership eligibility;

10

    d.  That GNCU failed to retain the required five percent (5%) ownership interest in the BRTX Loan Participation Agreement as required by 12 C.F.R. § 701.22(b)(3);

    e.  That GNCU's underwriting and due-diligence processes did not comply with applicable regulatory or internal lending policy requirements; and

    f.  That GNCU's communications to Plaintiff omitted material information necessary to prevent the representations made from being misleading.

52.    GNCU had a duty to disclose these facts because, without such disclosure, GNCU's prior statements to Plaintiff regarding membership status, regulatory compliance, and loan participation eligibility would be inaccurate, incomplete, and misleading.

53.    Plaintiff reasonably relied on GNCU's statements and omissions in deciding to purchase a participation interest in the BRTX Loan Participation Agreement and would not have done so had GNCU exercised reasonable care in disclosing all material information.

54.    As a direct and proximate result of GNCU's negligent misrepresentations, Plaintiff suffered pecuniary loss.

55.    Plaintiff therefore seeks compensatory, equitable, and punitive damages in an amount to be proven at trial, together with interest, attorney's fees, and costs, as allowed by law.

### THIRD CLAIM FOR RELIEF
#### Fraud (Inducement, Concealment, and Misrepresentation)
#### (BRTX Loan)

56.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

57.    Before Plaintiff entered into the BRTX Loan Participation Agreement on or about March 9, 2018, GNCU made material false representations to Plaintiff, including that the BRTX

Loan Participation Agreement satisfied all federal lending and participation requirements or criteria for permissible loan participation under 12 C.F.R. § 701.22.

58.    Each of these representations was false at the time it was made.

59.    GNCU made these false statements knowingly, or at minimum with reckless disregard for their truth or falsity, in order to induce Plaintiff to purchase a participation interest in the BRTX Loan Participation Agreement. GNCU also failed to disclose material facts necessary to avoid misleading Plaintiff, including:

    a.    That GNCU complied with all applicable NCUA regulations in order to permissibly participate the loan to BRTX and

    b.    That the BRTX loan and BRTX Loan Participation Agreement were originated in violation of GNCU's internal policies.

60.    These concealed and omitted facts were exclusively within GNCU's knowledge, custody and control. Plaintiff could not have discovered them through reasonable diligence because membership verification, underwriting steps, and loan decisions were managed internally by GNCU and not accessible to Plaintiff.

61.    GNCU's concealments and omissions were made with the intent to create a false impression of compliance and induce Plaintiff to rely on the belief that the BRTX Loan was properly originated, eligible for participation, and compliant with federal regulations.

62.    Plaintiff reasonably and justifiably relied on GNCU's representations and warranties in deciding to enter into the BRTX Loan Participation Agreement. Plaintiff would not have entered the transaction had it known the true facts regarding borrower membership, regulatory violations, or GNCU's lack of intent or ability to maintain its required ownership interest.

63.    As a direct and proximate result of GNCU's fraudulent inducement, concealment, and misrepresentations, Plaintiff suffered damages.

64.    GNCU's fraudulent conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to exemplary and punitive damages under applicable law.

65.    Plaintiff therefore seeks all damages available under law and equity, including compensatory, consequential, and punitive damages, together with attorney's fees, costs, and interest.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract**
**(Notre Dame Loan)**

66.    Plaintiff re-alleges and incorporates by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

67.    In connection with Notre Dame Advisors, LLC and Notre Dame Investors, LLC, on or about September 19, 2018, AFCU and GNCU executed a Loan Participation Agreement (the "Notre Dame Loan Participation Agreement") under which GNCU sold to AFCU a participation interest in the loan to Notre Dame.

68.    GNCU expressly warranted in the Notre Dame Loan Participation Agreement that the borrowers, Notre Dame Advisors, LLC and Notre Dame Investors, LLC, were members of either the originating credit union, GNCU, or of a participating credit union.

69.    GNCU breached this warranty because Notre Dame Advisors, LLC and Notre Dame Investors, LLC were not members of GNCU or any other participating credit union at the time the Notre Dame Loan Participation Agreement was made.

13

70.    Additionally, GNCU expressly represented and warranted that it would maintain a 5% interest in the Notre Dame Loan Participation Agreement to satisfy 12 C.F.R. § 701.22(b)(3) .

71.    GNCU breached this representation and warranty because GNCU sold its ownership interest in the Notre Dame loan.

72.    As a direct and proximate result of GNCU's Breach of the Notre Dame Loan, Plaintiff has sustained or will sustain damages, including but not limited to the value of its participation interest in the Notre Dame Loan, lost profits, and consequential damages, costs, and fees.

73.    Plaintiff therefore seeks all appropriate damages, together with interest, attorney's fees, and costs, as allowed by law.

## <u>FIFTH CLAIM FOR RELIEF</u>
### Negligent Misrepresentation and Concealment
### (Notre Dame Loan)

74.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

75.    At all relevant times, GNCU was acting in the course of its business, profession, employment, and/or in the context of the Notre Dame Loan Participation Agreement.

76.    In connection with the transaction or occurrence(s) described above, GNCU supplied false information to Plaintiff regarding the Notre Dame Loan Participation Agreement in which Plaintiff had a pecuniary interest.

77.    In connection with the transaction or occurrence described above, GNCU supplied false information to Plaintiff, including representations that Notre Dame Advisors, LLC and Notre Dame Investors, LLC were members of either the originating credit union, GNCU, or of a participating credit union.

78.    GNCU made these representations for the guidance of Plaintiff in Plaintiff's business and/or financial decisions and transactions regarding participation in the Notre Dame Loan Participation Agreement.

79.    Additionally, at all relevant times, GNCU owed Plaintiff a duty to exercise reasonable care in originating, underwriting, administering, and offering participation interests in the Notre Dame Loan Participation Agreement, including a duty to avoid misleading Plaintiff by concealing or omitting material facts necessary to ensure that GNCU's communications were accurate, complete, and not deceptive.

80.    GNCU possessed material information regarding the Notre Dame loan that was not known to Plaintiff and that Plaintiff could not have reasonably discovered through ordinary diligence, including information relating to borrower membership eligibility, underwriting deficiencies, and/or GNCU's noncompliance with NCUA regulations, including 12 C.F.R. § 701.22.

81.    GNCU knew, or in the exercise of reasonable care, should have known that Plaintiff would rely on GNCU to disclose material information necessary for Plaintiff to evaluate the risks of purchasing a participation interest in the Notre Dame loan.

82.    GNCU negligently failed to disclose material facts to Plaintiff, including but not limited to:

    a.    That Notre Dame Advisors, LLC and Notre Dame Investors, LLC were not members of GNCU or any participating credit union, or that membership had not been properly verified;

    b.    That GNCU had failed to comply with its obligations under 12 C.F.R. § 701.22(b)(1) relating to borrower membership eligibility;

    c.  That GNCU's underwriting and due-diligence process did not comply with applicable regulatory or internal policy requirements; and

    d.  That GNCU's communications to Plaintiff omitted material information necessary to prevent the representations made from being misleading.

83.    GNCU had a duty to disclose these facts because, without such disclosure, GNCU's prior statements to Plaintiff regarding membership status, regulatory compliance, and loan participation eligibility would be inaccurate, incomplete, and misleading.

84.    Plaintiff reasonably relied on GNCU's statements and omissions in deciding to purchase a participation interest in the Notre Dame Loan and would not have done so had GNCU exercised reasonable care in disclosing all material information.

85.    As a direct and proximate result of GNCU's negligent misrepresentations, Plaintiff suffered pecuniary loss.

86.    Plaintiff therefore seeks compensatory and equitable damages in an amount to be proven at trial, together with interest, attorney's fees, and costs, as allowed by law.

## SIXTH CLAIM FOR RELIEF
### Fraud (Inducement, Concealment, and Misrepresentation)
### (Notre Dame Loan)

80.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

81.    Before Plaintiff entered into the Notre Dame Loan Participation Agreement on or about September 19, 2018, GNCU made material false representations to Plaintiff, including that loan to Notre Dame satisfied all federal lending requirements, such as that it originated from a permissible entity and that GNCU would retain at least a five percent (5%) ownership interest in the Notre Dame Loan in compliance with NCUA regulations.

16

82.    Each of these representations was false at the time it was made. Notre Dame Advisors, LLC and Notre Dame Investors, LLC were not members of GNCU or any other credit union.

83.    GNCU made these false statements knowingly, or at minimum with reckless disregard for their truth or falsity, in order to induce Plaintiff to purchase a participation interest in the Notre Dame Loan. GNCU also failed to disclose material facts necessary to avoid misleading Plaintiff, including:

a.  That GNCU had not completed borrower-membership verification;

b.  That the Notre Dame Loan was originated in violation of GNCU's internal policies; and

c.  That federal membership and retention requirements had not been met.

84.    These concealed and omitted facts were exclusively within GNCU's knowledge. Plaintiff could not have discovered them through reasonable diligence because membership verification, regulatory underwriting steps, and retention decisions were managed internally by GNCU and not accessible to Plaintiff.

85.    GNCU's concealments and omissions were made with the intent to create a false impression of compliance and induce Plaintiff to rely on the belief that the Notre Dame Loan was properly originated, eligible for participation, and compliant with federal regulations.

86.    Plaintiff reasonably and justifiably relied on GNCU's representations and omissions in deciding to enter into the Notre Dame Loan participation. Plaintiff would not have entered the transaction had it known the true facts regarding borrower membership, regulatory violations, or GNCU's lack of intent or ability to maintain its required ownership interest.

17

87.  As a direct and proximate result of GNCU's fraudulent inducement, fraudulent concealment, and fraudulent misrepresentations, Plaintiff suffered damages.

88.  GNCU's fraudulent conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to exemplary and punitive damages under applicable law.

89.  Plaintiff therefore seeks all damages available under law and equity, including compensatory, consequential, equitable, and punitive damages, together with attorney's fees, costs, and interest.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Contract**
**(MVC Loan)**

90.  Plaintiff re-alleges and incorporates by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

91.  In connection with MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc., on or about November 22, 2017, AFCU and GNCU executed a Loan Participation Agreement naming MVC as the borrower ("MVC Loan Participation Agreement") under which GNCU sold to Plaintiff a participation interest in the loan to MVC.

92.  GNCU expressly warranted in the MVC Loan Participation Agreement that the borrowers, MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc., were members of either the originating credit union, GNCU, or of a participating credit union.

93.  GNCU breached this warranty because all of the borrowers were not members of GNCU or any other participating credit union at the time the MVC Loan Participation Agreement was made. Since then, MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc. defaulted on the Loan.

18

94.    As a direct and proximate result of GNCU's Breach of the MVC Loan Participation Agreement, Plaintiff has sustained or will sustain damages, including but not limited to the value of its interest in the MVC Loan Participation Agreement, lost profits, and consequential damages, costs, and fees.

95.    Plaintiff therefore seeks all appropriate damages, together with interest, attorney's fees, and costs, as allowed by law.

## EIGHTH CLAIM FOR RELIEF
### Negligent Misrepresentation and Concealment
### (MVC Loan)

96.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

97.    At all relevant times, GNCU was acting in the course of its business, profession, employment, and/or in the context of the MVC Loan Participation Agreement.

98.    In connection with the transaction or occurrence(s) described above, GNCU supplied false information to Plaintiff regarding the MVC Loan Participation Agreement in which Plaintiff had a pecuniary interest.

99.    In connection with the transaction or occurrence described above, GNCU supplied false information to Plaintiff, including but not limited to the representations that MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc. were members of either the originating credit union, GNCU, or of a participating credit union.

100.    GNCU made these representations for the guidance of Plaintiff in Plaintiff's business and/or financial decisions and transactions regarding participation in the MVC loan.

101.    Additionally, at all relevant times, GNCU owed Plaintiff a duty to exercise reasonable care in originating, underwriting, administering, and offering participation interests in

19

the MVC Loan Participation Agreement, including a duty to avoid misleading Plaintiff by concealing or omitting material facts necessary to ensure that GNCU's communications were accurate, complete, and not deceptive.

102.    GNCU possessed material information regarding the MVC loan and the MVC Loan Participation Agreement that were not known to Plaintiff and that Plaintiff could not have reasonably discovered through ordinary diligence, including information relating to borrower membership eligibility, underwriting deficiencies, and GNCU's noncompliance with NCUA regulations.

103.    GNCU knew, or in the exercise of reasonable care, should have known that Plaintiff would rely on GNCU to disclose material information necessary for Plaintiff to evaluate the risks of purchasing a participation interest in the MVC loan.

104.    GNCU negligently failed to disclose material facts to Plaintiff, including but not limited to that MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc. were not members of GNCU or any participating credit union, or that membership had not been properly verified and that GNCU had failed to comply with its obligations under NCUA regulations, including 12 C.F.R. § 701.22(b)(1) relating to borrower membership eligibility; that GNCU's underwriting and due-diligence process did not comply with applicable regulatory or internal policy requirements; and that GNCU's communications to Plaintiff omitted material information necessary to prevent the representations made from being misleading.

105.    GNCU had a duty to disclose these facts because, without such disclosure, GNCU's prior statements to Plaintiff regarding membership status, regulatory compliance, and loan participation eligibility would be inaccurate, incomplete, and misleading.

106. Plaintiff reasonably relied on GNCU's statements and omissions in deciding to purchase a participation interest in the MVC loan and would not have done so had GNCU exercised reasonable care in disclosing all material information.

107. As a direct and proximate result of GNCU's negligent misrepresentations, Plaintiff suffered pecuniary loss.

108. Plaintiff therefore seeks damages in an amount to be proven at trial, together with interest, attorney's fees, and costs, as allowed by law.

## NINTH CLAIM FOR RELIEF
### Fraud (Inducement, Concealment, and Misrepresentation)
### (MVC Loan)

109. Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

110. Before Plaintiff entered into the MVC Loan Participation Agreement on or about November 22, 2017 GNCU made material false representations to Plaintiff, including that:

    a. That MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc. were members of either GNCU or a participating credit union and

    b. That the Loan satisfied all federal lending and participation requirements, including borrower-membership eligibility.

115. Each of these representations was false at the time it was made. MVC Holdings, LLC and McKechnie Vehicle Components USA, Inc. were not members of GNCU or any other credit union.

116. GNCU made these false statements knowingly, or at minimum with reckless disregard for their truth or falsity, in order to induce Plaintiff to purchase a participation interest in

the MVC loan. GNCU also failed to disclose material facts necessary to avoid misleading Plaintiff, including:

    a.  That GNCU had not completed borrower-membership verification;

    b.  That the MVC Loan was originated in violation of GNCU's internal policies; and

    c.  That federal membership and retention requirements had not been met.

117.    These concealed and omitted facts were exclusively within GNCU's knowledge. Plaintiff could not have discovered them through reasonable diligence because membership verification, regulatory underwriting steps, and retention decisions were managed internally by GNCU and not accessible to Plaintiff.

118.    GNCU's concealments and omissions were made with the intent to create a false impression of compliance and induce Plaintiff to rely on the belief that the MVC loan was properly originated, eligible for participation, and compliant with federal regulations.

119.    Plaintiff reasonably and justifiably relied on GNCU's representations and omissions in deciding to enter into the MVC Loan Participation Agreement. Plaintiff would not have entered the transaction had it known the true facts regarding borrower membership, regulatory violations, or GNCU's lack of intent or ability to maintain its required ownership interest.

120.    As a direct and proximate result of GNCU's fraudulent inducement, fraudulent concealment, and fraudulent misrepresentations, Plaintiff suffered damages including, but not limited to:

    a.  Loss of principal;

    b.  Lost interest and profits;

22

c.  Charge-offs and write-downs;

d.  Out-of-pocket losses;

e.  Benefit-of-the-bargain damages; and

f.  Other consequential damages to be proven at trial.

121.  GNCU's fraudulent conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to exemplary and punitive damages under applicable law.

122.  Plaintiff therefore seeks all damages available under law and equity, including compensatory, consequential, and punitive damages, together with attorney's fees, costs, and interest.

## TENTH CLAIM FOR RELIEF
### Breach of Contract
### (Seville Farms Loan)

123.  Plaintiff re-alleges and incorporates by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

124.  In connection with Seville Farms, Inc., Quick Turn Merchandising, LP, Woodbridge Partners, LP, Hillister Farms, LLC, Brentwood Nursery, Inc., GB2 Holdings, LLC, William Brentlinger and Robert Brentlinger, on or about August 16, 2018, Plaintiff and GNCU executed a Loan Participation Agreement ("Seville Farms Loan Participation Agreement") under which GNCU sold to Plaintiff a participation interest in the loan to Seville Farms.

125.  GNCU expressly warranted in the Seville Farms Loan Participation Agreement that the borrowers, Seville Farms, Inc., Quick Turn Merchandising, LP, Woodbridge Partners, LP, Hillister Farms, LLC, Brentwood Nursery, Inc., GB2 Holdings, LLC, William Brentlinger and

23

Robert Brentlinger, were members of either the originating credit union, GNCU, or of a participating credit union.

126.    GNCU breached this warranty because all of the borrowers were not members of GNCU or any other participating credit union at the time the Seville Farms Loan Participation Agreement was made. Since then, Seville Farms defaulted on the loan.

127.    As a direct and proximate result of GNCU's Breach of the Seville Farms Loan, Plaintiff has sustained or will sustain damages, including but not limited to the value of its participation interest in the Seville Farms Loan, lost profits, and consequential damages, costs, and fees.

128.    Plaintiff therefore seeks all appropriate damages, together with interest, attorney's fees, and costs, as allowed by law.

## ELEVENTH CLAIM FOR RELIEF
### Negligent Misrepresentation and Concealment
### (Seville Farms Loan)

129.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

130.    At all relevant times, GNCU was acting in the course of its business, profession, employment, and/or in the context of the Seville Farms Loan.

131.    In connection with the transaction or occurrence(s) described above, GNCU supplied false information to Plaintiff regarding the Seville Farms Loan Participation Agreement in which Plaintiff had a pecuniary interest.

132.    In connection with the transaction or occurrence described above, GNCU supplied false information to Plaintiff, including but not limited to the following representations that the

borrowers were members of either the originating credit union, GNCU, or of a participating credit union and that GNCU complied with all NCUA regulations.

133.    GNCU made these representations for the guidance of Plaintiff in Plaintiff's business and/or financial decisions and transactions regarding the Seville Farms Loan Participation Agreement.

134.    Additionally, at all relevant times, GNCU owed Plaintiff a duty to exercise reasonable care in originating, underwriting, administering, and offering participation interests in the Seville Farms loan, including a duty to avoid misleading Plaintiff by concealing or omitting material facts necessary to ensure that GNCU's communications were accurate, complete, and not deceptive.

135.    GNCU possessed material information regarding the Seville Farms Loan Participation Agreement that was not known to Plaintiff and that Plaintiff could not have reasonably discovered through ordinary diligence, including information relating to borrower membership eligibility, underwriting deficiencies, and GNCU's noncompliance with NCUA regulations.

136.    GNCU knew, or in the exercise of reasonable care, should have known that Plaintiff would rely on GNCU to disclose material information necessary for Plaintiff to evaluate the risks of purchasing a participation interest in the Seville Farms loan.

137.    GNCU negligently failed to disclose material facts to Plaintiff, including but not limited to:

      a.  That Seville Farms, Inc., Quick Turn Merchandising, LP, Woodbridge Partners, LP, Hillister Farms, LLC, Brentwood Nursery, Inc., GB2 Holdings, LLC, William Brentlinger and Robert Brentlinger were not members of GNCU or

25

any participating credit union, or that membership had not been properly verified;

b. That GNCU had failed to comply with its obligations under 12 C.F.R. § 701.22(b)(1) relating to borrower membership eligibility;

c. That GNCU's underwriting and due-diligence process did not comply with applicable regulatory or internal policy requirements; and

d. That GNCU's communications to Plaintiff omitted material information necessary to prevent the representations made from being misleading.

138.    GNCU had a duty to disclose these facts because, without such disclosure, GNCU's prior statements to Plaintiff regarding membership status, regulatory compliance, and loan participation eligibility would be inaccurate, incomplete, and misleading.

139.    Plaintiff reasonably relied on GNCU's statements and omissions in deciding to purchase a participation interest in the Seville Farms loan and would not have done so had GNCU exercised reasonable care in disclosing all material information.

140.    As a direct and proximate result of GNCU's negligent misrepresentations, Plaintiff suffered pecuniary loss.

141.    Plaintiff therefore seeks compensatory and equitable damages in an amount to be proven at trial, together with interest, attorney's fees, and costs, as allowed by law.

## TWELFTH CLAIM FOR RELIEF
### Fraud (Inducement, Concealment, and Misrepresentation)
### (Seville Farms Loan)

142.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

26

143.    Before Plaintiff entered into the Seville Farm Loan on or about August 26, 2018, GNCU made material false representations to Plaintiff, including that:

a.  That Seville Farms, Inc., Quick Turn Merchandising, LP, Woodbridge Partners, LP, Hillister Farms, LLC, Brentwood Nursery, Inc., GB2 Holdings, LLC, William Brentlinger and Robert Brentlinger, were members of either GNCU or a participating credit union; and

b.  That the Loan satisfied all federal lending and participation requirements, including borrower-membership eligibility.

144.    Each of these representations was false at the time it was made. Seville Farms, Inc., Quick Turn Merchandising, LP, Woodbridge Partners, LP, Hillister Farms, LLC, Brentwood Nursery, Inc., GB2 Holdings, LLC, William Brentlinger and Robert Brentlinger, were not member(s) of GNCU or any other credit union.

145.    GNCU made these false statements knowingly, or at minimum with reckless disregard for their truth or falsity, in order to induce Plaintiff to purchase a participation interest in the Seville Farms Loan. GNCU also failed to disclose material facts necessary to avoid misleading Plaintiff, including:

a.  That GNCU had not completed borrower-membership verification;

b.  That the Seville Farm loan  and Seville Farms Loan Participation Agreement was originated in violation of GNCU's internal policies;

c.  That federal membership and retention requirements had not been met; and

d.  That GNCU faced regulatory exposure, including possible mandated divestment, due to noncompliance.

27

146.    These concealed and omitted facts were exclusively within GNCU's knowledge. Plaintiff could not have discovered them through reasonable diligence because membership verification, regulatory underwriting steps, and retention decisions were managed internally by GNCU and not accessible to Plaintiff.

147.    GNCU's concealments and omissions were made with the intent to create a false impression of compliance and induce Plaintiff to rely on the belief that the Seville Farm Loan was properly originated, eligible for participation, and compliant with federal regulations.

148.    Plaintiff reasonably and justifiably relied on GNCU's representations and omissions in deciding to enter into the Seville Farms Loan Participation Agreement. Plaintiff would not have entered the transaction had it known the true facts regarding borrower membership, regulatory violations, or GNCU's lack of intent or ability to maintain its required ownership interest.

149.    As a direct and proximate result of GNCU's fraudulent inducement, fraudulent concealment, and fraudulent misrepresentations, Plaintiff suffered damages including, but not limited to:

    a.  Loss of principal;

    b.  Lost interest and profits;

    c.  Charge-offs and write-downs;

    d.  Out-of-pocket losses;

    e.  Benefit-of-the-bargain damages; and

    f.  Other consequential damages to be proven at trial.

150.    GNCU's fraudulent conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to exemplary and punitive damages under applicable law.

151.    Plaintiff therefore seeks all damages available under law, including compensatory, consequential, and punitive damages, together with attorney's fees, costs, and interest.

## THIRTEENTH CLAIM FOR RELIEF
### Breach of Contract
### (Superior Shipyard Loan)

152.    Plaintiff re-alleges and incorporates by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

153.    In connection with Superior Shipyard and Fabrication, Inc., on or about July 19, 2019, AFCU and GNCU executed a Loan Participation Agreement ("Superior Shipyard Loan Participation Agreement") under which GNCU sold to Plaintiff a participation interest in the loan to Superior Shipyard.

154.    GNCU expressly represented and warranted in the Superior Shipyard Loan Participation Agreement that the borrowers were members of either the originating credit union, GNCU, or of a participating credit union.

155.    GNCU breached these representations and warranties because all of the borrowers were not members of GNCU or any other participating credit union at the time the Superior Shipyard Loan Participation Agreement was made.

156.    As a direct and proximate result of GNCU's breach of the Superior Shipyard Loan Participation Agreement, Plaintiff has sustained or will sustain damages, including but not limited to the value of its participation interest in the Superior Shipyard Loan Participation Agreement, lost profits, and consequential damages, costs, and fees.

157.    Plaintiff therefore seeks all appropriate damages, together with interest, attorney's fees, and costs, as allowed by law.

## FOURTEENTH CLAIM FOR RELIEF
### Negligent Misrepresentation and Concealment
### (Superior Shipyard Loan)

158.    Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

159.    At all relevant times, GNCU was acting in the course of its business, profession, employment, and/or in the context of the Superior Shipyard Loan Participation Agreement.

160.    In connection with the transaction or occurrence(s) described above, GNCU supplied false information to Plaintiff regarding the Superior Shipyard Loan Participation Agreement in which Plaintiff had a pecuniary interest.

161.    In connection with the transaction or occurrence described above, GNCU supplied false information to Plaintiff, including but not limited to the following representations that Superior Shipyard and Fabrication, Inc. was a member of either the originating credit union, GNCU, or of a participating credit union.

162.    GNCU made these representations for the guidance of Plaintiff in Plaintiff's business and/or financial decisions and transactions regarding participation in the Superior Shipyard Loan Participation Agreement.

163.    Additionally, at all relevant times, GNCU owed Plaintiff a duty to exercise reasonable care in originating, underwriting, administering, and offering participation interests in the Superior Shipyard Loan Participation Agreement, including a duty to avoid misleading Plaintiff by concealing or omitting material facts necessary to ensure that GNCU's communications were accurate, complete, and not deceptive.

164.    GNCU possessed material information regarding the loan to Superior Shipyard and the Superior Shipyard Loan Participation Agreement that was not known to Plaintiff and that Plaintiff could not have reasonably discovered through ordinary diligence, including information relating to borrower membership eligibility, underwriting deficiencies, and GNCU's noncompliance with federal regulations.

165.    GNCU knew, or in the exercise of reasonable care, should have known that Plaintiff would rely on GNCU to disclose material information necessary for Plaintiff to evaluate the risks of purchasing a participation interest in the Superior Shipyard loan.

166.    GNCU negligently failed to disclose material facts to Plaintiff, including but not limited to that Superior Shipyard and Fabrication, Inc. was not a member of GNCU or any participating credit union, or that membership had not been properly verified or that GNCU had failed to comply with its obligations under 12 C.F.R. § 701.22(b)(1) relating to borrower membership eligibility.

167.    GNCU's communications to Plaintiff omitted material information necessary to prevent the representations made from being misleading.

168.    GNCU had a duty to disclose these facts because, without such disclosure, GNCU's prior statements to Plaintiff regarding membership status, regulatory compliance, and loan participation eligibility would be inaccurate, incomplete, and misleading.

169.    Plaintiff reasonably relied on GNCU's statements and omissions in deciding to purchase a participation interest in the Superior Shipyard Loan and would not have done so had GNCU exercised reasonable care in disclosing all material information.

170.    As a direct and proximate result of GNCU's negligent misrepresentations, Plaintiff suffered pecuniary loss.

171.   Plaintiff therefore seeks compensatory and equitable damages in an amount to be proven at trial, together with interest, attorney's fees, and costs, as allowed by law.

## FIFTEENTH CLAIM FOR RELIEF
### Fraud (Inducement, Concealment, and Misrepresentation)
### (Superior Shipyard Loan)

179.   Plaintiff re-alleges and incorporated by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

180.   Before Plaintiff entered into the Superior Shipyard Loan on or about July 19, 2019, GNCU made material false representations to Plaintiff, including that Superior Shipyard and Fabrication, Inc. was a member of either GNCU or a participating credit union and that the Superior Shipyard Loan Participation Agreement satisfied all federal lending and participation requirements, including borrower-membership eligibility.

181.   Each of these representations was false at the time they were made. Superior Shipyard, was not a member of GNCU or any other credit union and GNCU did not comply with all NCUA regulations.

182.   GNCU made these false statements knowingly, or at minimum with reckless disregard for their truth or falsity, in order to induce Plaintiff to purchase a participation interest in the Superior Shipyard loan. GNCU also failed to disclose material facts necessary to avoid misleading Plaintiff, including that GNCU had not completed borrower-membership verification and that the Superior Shipyard loan and Superior Shipyard Loan Participation Agreement were made in violation of GNCU's internal policies, and that federal membership and retention requirements had not been met.

183.   These concealed and omitted facts were exclusively within GNCU's knowledge. Plaintiff could not have discovered them through reasonable diligence because membership

32

verification, underwriting, and regulatory compliance were managed internally by GNCU and not accessible to Plaintiff.

184. GNCU's fraudulent concealments and omissions were made with the intent to create a false impression of compliance and induce Plaintiff to rely on the belief that the Superior Shipyard loan was properly originated, eligible for participation, and compliant with federal regulations.

185. Plaintiff reasonably and justifiably relied on GNCU's representations and omissions in deciding to enter into the Superior Shipyard Loan Participation Agreement. Plaintiff would not have entered the transaction had it known the true facts regarding borrower membership and noncompliance with NCUA regulations.

186. As a direct and proximate result of GNCU's fraudulent inducement, concealment, and misrepresentations, Plaintiff has suffered damages.

187. GNCU's fraudulent conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to exemplary and punitive damages under applicable law.

188. Plaintiff therefore seeks all damages available under law, including compensatory, consequential, equitable, and punitive damages, together with attorney's fees, costs, and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Arbor Financial Credit Union prays for judgment in its favor and against Defendant Greater Nevada Credit Union in an amount to be determined by jury at trial, to include all available legal and equitable damages, punitive damages, legal interest (pre and post-judgment), court costs, attorney's fees, and any and all such other and further relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury against Defendant on all issues so triable.

Dated: March 27, 2026

Respectfully submitted,

*/s/ Taylor L. Ester*
Taylor L. Ester (P85649)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: 248-841-2200
tle@millerlawpc.com

Jonathan Mann*
**PITTMAN, DUTTON, HELLUMS,
BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
T: (205) 322-8880
jonm@pittmandutton.com
**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*